In our final case today, Harris v. Town of Southern Pines, Mr. Rupert Shule, I'm sorry I messed up your name, I apologize, we're good to have you here. Thank you for having me here, Your Honor, as it may have pleased the court. It is an honor to be here today. I'm joined by my client, Lou Harris, Sr. from Aberdeen, North Carolina. This case involves a genuine dispute of material fact. Our law is clear that when there is a dispute of material fact, that is an issue that must go to the jury. The defendants, the officers, continue to claim in their brief that they did not witness Plaintiff's son go to the vehicle and place or take items in the vehicle. That is in direct contradiction to their own surveillance notes, to the findings of the U.S. Attorney, that Plaintiff's son... The findings of the U.S. Attorney? Yes, Your Honor. What are they? The United States Attorney... Well, they declined to proceed. They did. Does that mean they found... In a companion case, they wrote a Rule 11 memorandum where they found that Plaintiff's son, on two occasions, had gone back and forth to the vehicle and appeared to place or take items from the vehicle. And the officers testified at their deposition, Officer Perry, the only way the U.S. Attorney could have learned that information would have been from them. But yet, they still contest that that's what happened. That is why we have a genuine issue of material dispute. Now, the Rule 11, you mean a sentencing... A sentencing memorandum for Plaintiff's son. Plaintiff's son was convicted, eventually, of possessing the narcotics found in the vehicle. And in that Rule 11 memorandum... And that's made a matter of public... That's a public record? It's a public record. It's part of the appendix, Your Honor. And I can cite it for you, but... That's all right. The officers also never observed the Plaintiff, my client, go near the vehicle. They never observed him participate in any sort of transaction related to the vehicle. They had no evidence that he had knowledge of the narcotics. Yet, still, the officers charged him with trafficking. And when they did so, they omitted all of this material evidence to the DA, to the magistrate, to the U.S. attorney. As a result, Lee Harris Sr., a 62-year-old military veteran, a former corrections officer who had never been arrested, was charged with drug trafficking and held initially on a $5 million bond. Just to clarify, I mean, it sounds like this is the argument you're making, but just to make it explicit, you're arguing there was not probable cause. Certainly, there was not probable cause. And that's the argument you have to make for malicious prosecution and fabrication of evidence. That's correct, Your Honor. That's the key here. That's the key. And the district court relied predominantly on constructive possession precedent to find probable cause. And the reason why... It was cocaine? The cocaine is what was found in the car, yes. You call it illicit drugs. Cocaine in an old Cadillac parked out beside the house? An old Cadillac that had a cover on it that had no battery. By a cover on it, you mean a... A gray car cover. A car cover, a big car cover. A big car cover that had not been registered for three years. How long had it been sitting there beside the house? A long time. At least, you know, roughly three years, Your Honor. It hadn't been driven in three years. It was inoperable. And the district court, as Your Honor has pointed out, found probable cause largely based on constructive possession precedent. But what's important about... Your client lived in the house. Sorry, Your Honor? Your client lived in the house. The house was my client's. His son also was frequently there. He went back and forth. There was lots of surveillance done by these officers at that location. That is why they executed a search warrant there. The surveillance, though, was of the son. The target was the son. This investigation went on for a year because of the son. My client was not a target. They have no proof of knowledge of narcotics in the vehicle. And United States v. Moody, a 2021 case from this court, says that dominion, control, and knowledge are required to prove constructive possession. There is no proof of knowledge in this case. Further, Kerr and Taylor, the United States Supreme Court cases cited by the district court... Well, the question is whether the facts known to the officers at the time would have supported them thinking that, you know, he might have knowledge, right? They couldn't prove it. You don't have to prove beyond a reasonable doubt, right, like the case you were quoting there, that he had knowledge. In our court, they're relying on that the Cadillac was on his property, had been registered to him. He knew where the keys were. He knew all about the doors that worked, which ones didn't, and the battery. And, you know, they thought he knows all about this car. It's clearly his. And these drugs are in plain sight in the car. So tell us about why that's not probable cause. Your Honor, two things. First, I'll address those facts, and then I'll go back to the constructive possession question on knowledge. First, the facts that you stated are the facts that's viewed in the light most favorably to the defendant. The light most favorably to the plaintiff, the facts are the son was the target. Well, tell me what's wrong with the facts I just said. What did I say that didn't take things in the light most favorably to you? I want to get it right. Okay. The vehicle. Well, there's additional facts that the officers omitted. The key one here. You're talking about what omitted. You omitted from the affidavit supporting the search warrant. No, slightly different, Your Honor. Omitted when they went to have him charged in front of the magistrate. Omitted from the district attorney. Omitted from the U.S. attorney. They did not tell any of these decision makers that they had seen the son going back and forth to the Cadillac, that they had GPS information. So you're talking about the probable cause for the arrest or probable cause for the search warrant? For the arrest, Your Honor. For the arrest. Yes. The search warrant was entirely about the son. There's nothing in the search warrant at all about the father. Well, now, in the arrest, they didn't have a warrant for the arrest. That's just whether the officers had probable cause at the moment, right? I thought your argument is probable cause to hold him. I guess you have to have that for malicious prosecution. But your fabrication claim is, as I understood it, is probable cause to keep detaining him. That is correct. Because you're talking about what they did or didn't say to the magistrate and, I guess, the state grand jury. All that's after he's been arrested. But that is also relevant to the malicious prosecution. How many affidavits were there filed? How many affidavits were filed? In support of the arrest. In support of, sorry? In support of the arrest. So, let me give the full facts. Where is the probable cause or not probable cause supposed to be? So, the probable cause alleged by the officers and how it actually occurred is they detained Mr. Harris at his house based on the facts that Judge Rushing just laid out. Where did they write it down? They then go to a magistrate and Officer Lowry testifies to a magistrate. And there's a record of that? Yes, Your Honor. And writes a warrant to a magistrate. He didn't write the warrant. He wrote an affidavit. He testified that it is his practice and their policy in Southern Pines, they draft the warrant themselves and give it to the magistrate who then looks at it. He drafted up the warrant. Well, there was an affidavit to support it? There was not, Your Honor. There was no affidavit? There was no affidavit. So, how do you get a warrant without a supporting affidavit? He testified to the magistrate. So, he testified orally? Exactly. How do we know what he said? He told me at his deposition. He gave you a deposition later on what he said? Yes, Your Honor. But the time of the arrest? Yes. That was after the deposition. I mean, after the arrest. We've got a deposition. That's during the course of this lawsuit. That's correct. But the time of the arrest, was there an affidavit? No. There was nothing but a warrant? There was only a search warrant. And the officer wrote up? Only a search warrant. Search warrant for the house? For the house. Or the car? For the house. Search warrant for the house? Yes. And I believe it also included the vehicles outside the house as well. You're not challenging the search warrant? I'm not. The search warrant to us is irrelevant. Okay. The only issue here... So, the search warrant is irrelevant? Right. The only issue here is... I thought the seizure of the cocaine had something to do with it. Not with the search warrant, Your Honor. All right. No. We are only arguing that when the officers went to the magistrate, they omitted material facts to the magistrate. Well, how do we know what they did and what they didn't? Because we don't have a record. We do have a record. We asked him if he told the magistrate about the son going back and forth to the car. After the fact record beforehand, there's nothing before the arrest that exists except this proposed warrant. That's correct. All right. A search warrant. That's one page. And I just want to be clear. What's it say? Anything about... Nothing about the father at all. It's all about the son, about the son's patterns, about the son... But it's an arrest warrant for the father. No, no, no, no, no. It's a search warrant for the house. I'm talking about the arrest... The arrest warrant... You said the search warrant has nothing to do with it. It has nothing to do with it. But the arrest warrant has something to do with it, and it's the arrest warrant for the father. That's correct. Does it say something about what the father did wrong? It essentially says that the father was using the car to store narcotics. All right. It basically says that, and the father is the plaintiff in this 1980s receipt. Correct. And to go back to your question, Judge Rushing, the reason why it's not just a determination of what occurred at the residence when they put handcuffs on him is because the malicious prosecution test is also about... It starts at the initiation of process. Process is when he was charged. So any evidence that they learned up to the point of process and any evidence that they omit from that magistrate is relevant to that consideration. Now, I want to go back... Do you agree that to continue holding him before he had a trial and was found guilty, which he wasn't, but to hold someone pretrial, you have to have probable cause? Yes. The whole time, and so probable cause, your fabrication of evidence claim is a Fourth Amendment claim, and if they had probable cause to continue holding him, you would have no fabrication of evidence claim. That is the law currently in the Fourth Circuit. I do think that Manuel V. Joliet, which is a United States Supreme Court decision, says it may change that, but I don't want to spend too much time on that today because I think we have a primary issue of was there probable cause in this case, and I believe there was not. And I want to go back, if it's okay, to your question of knowledge. Now, he was held four months? Six months, roughly. Six months. Yes, Your Honor. And then the... Then the state dismisses the case. The U.S. attorney adopts the prosecution, reviews everything, comes to the conclusion that they learned from the officers that the son had been placing the narcotics in the vehicle and dismisses all of the charges. And is that the point? He was released from custody? Yes, that is when he was released. Well, so he had been released. Was there a bond fix that he couldn't make? Eventually he did make a bond. He was out on home arrest for about four months, and that's the case. So he had been out. But he was held? In custody for six months in state custody, eight days in federal custody, four months on home detention. U.S. v. Myers is a 2021 Fourth Circuit case which cites United States v. DeRee, a 1948 case that stands for the proposition that any inference of constructive possession dissipates when a person is singled out as the responsible party. That is exactly what we have here. The police officers knew the son was the responsible party, and so therefore constructive possession cannot be the basis for probable cause when they have already singled out the guilty perpetrator. If you look at the other constructive possession cases… And what you want is a trial? Yes, Your Honor. We want this to be remanded for a trial. And you think probable cause would be the issue at trial?  You don't think probable cause can be a factual determination? That's what the Fourth Circuit held… It can't be a jury question? …in United States v. Armstrong. You're saying it can't be a jury question? I think the jury question is, is there a material… So you're saying it can't be a jury question? Under Fourth Circuit precedent, no. Okay. I want to touch quickly on the other constructive possession precedent. Kirby Taylor, both plain view cases. Both cases where drugs are found inside of a house that people were routinely using. United States v. Myers, a car case where two people are found inside the car at the same time. There is no evidence that the father was going inside this vehicle. The police did not observe him going inside this vehicle. There's no evidence that he had knowledge of this vehicle. Thank you, Your Honors. I've got a question. What would be the issue at trial? If it's not probable cause. The dispute of material fact is whether or not the officers saw the son go to the car. They claim in their brief that they did not. They testified at depositions. They did not. Their notes say something different. The issue of material fact… I'm just wanting to know what the issue would be for the jury. Did the officers see the son go to the car? I thought you were going to say the probable cause was the issue here and it's a jury question. No. No, I think after Armstrong, that's no longer available. You're foreclosed on that. That's my understanding. But, yes, the issue of material fact is did they see him go to the car. I'll let you sit down. Go ahead. I thought, and he can speak for himself, I guess, I thought the government's brief when I read it, they just quote the notes and they say at one time they saw the son over at the vehicle and another time they saw him, quote, placing or retrieving something from underneath a tarped item. They say that and that quotes the notes. So, what's the dispute there? Page 29 of their brief states they did not see the son go and place or take items from the vehicle. They say that is the key issue. I thought the two of you were disputing whether the items were narcotics. In your brief, you keep saying they saw him put drugs in and out of the vehicle and they say we saw him put something. They say they didn't even see him put anything. And you think that's material to whether there was probable cause? Yes, and also because of all the GPS surveillance. There's GPS surveillance that they saw the son after he left the home go to a trap house where they then observed the son drop narcotics there. So, it's not just these two cases or these two occasions where they saw this happen. They were tracking him back and forth and they knew exactly what he was doing. Thank you. Mr. Perlin? Good to have you with us, sir. Thank you, Your Honors, and may it please the Court, my name is Christian Perlin and I represent the defendants of the Southern Fines Police Department and their officers in this case. Defendants ask that the Court affirm the district court decision, granting summary judgment in favor of defendants for three main reasons. The totality of the facts and circumstances in this case, the facts known to the officers at the time they made the arrest and at the time they testified to the grand juries and to the magistrate, would lead any reasonable person to find probable cause to believe the plaintiff committed a crime. Second, there's no evidence showing material omissions or misrepresentations by the officers in any testimony to secure probable cause, nor is there any indication of their intent to mislead the fact finder, or I'm sorry, the judicial officer. And third, the officers are entitled to qualified immunity on the federal claims and public official immunity on the state law claims. The arrest warrant was issued by a state magistrate? First, yes, Your Honor, and then the plaintiff was indicted after that. He was indicted after that, but he said what they're after is the arrest before the magistrate. Did the paper show more than that? Your Honor, my understanding is that the process started at that point, but the arguments made by counsel have been that the same testimony was then provided to a grand jury for the state and then a federal grand jury. Is it correct there was no affidavit and no record of any evidence presented to the magistrate? That's correct, Your Honor. How do you get a warrant without information under oath? Live testimony. What does the Fourth Amendment say? My apologies, Your Honor. Live testimony to the magistrate is what was provided, and the reason for that— There's no record of it? There is the magistrate's order, and that's it. There's no record of what was said? That's correct, Your Honor. There's nothing in the joint appendix other than Lowry's testimony in his deposition recounting— Which was not— That's correct. That had already been in jail and out, I suspect, by that. That's correct, Your Honor. For six to nine months or whatever. That's correct, Your Honor. Is that the way you get arrest warrants in North Carolina generally? So, Your Honor, the— Without any supporting documentation whatsoever? The difference in this case, my understanding is that that's not the typical— Can you answer my question yes or no, and then say the difference? Sorry. The answer directly is no, that is not the typical practice. The difference here is that this—I apologize. This is an investigation and arrests of several people. There were arrests made at another address. Plaintiff was the only one arrested at his address. But Officer Lowry was swearing to several arrests before the magistrate, and drafting all of those warrants would have held them— or drafting all of those— Who drafted the warrants? Lowry drafted the— The officer. The prosecutor wasn't in on it. That's correct, Your Honor. The officer—is that one of the defendants? Yes, Lowry— I've got it here somewhere. Lowry. You said Lowry. He's one of them, too, according to the style of the case. That's correct, Your Honor. So you're saying that you were investigating a lot of people, and then the basis for arresting Mr. Harris Sr. was what? Mr. Harris— Because he lived at a house where you found drugs in an old car. He was the only occupant of the house at the time. He was the registered owner of the car, although the registration was expired. He demonstrated— It expired three years before. Correct, Your Honor, but this is not an issue of whether the car was operable, whether it could be driven on the road. It was a matter of whose car was it. But you had seen somebody else go around the house, right? No. Is that incorrect, your notes? That's incorrect, Your Honor, and I'll direct you to the Joint Appendix page. Starting on page 241 and 242 is where the surveillance notes for— And there's nothing about Jr. in there at all? No. What is about Jr. in there is going to a tarped item. A tarped item? Correct, Your Honor. A car. So— Counsel, was it a car? I believe it was a car. Why don't you just say that it was a tarped item? It was a tarped car. And did what? Because that's what's in the notes, Your Honor. And then did what? What did Jr. do? He appeared from wooded surveillance to place or take items from the tarped car. All right. If you look at Plaintiff's Exhibit 20, which is a photograph, they even describe the covering of the Cadillac as a car cover and it's gray. Okay. The correlation between the tarped item and it not— or the lack of correlation between the tarped item and it not being the Cadillac is the following note where it says that Jr. was seen over near an item cover or vehicle covered by a blue tarp. And that's a consistent description that the officers have maintained throughout this case. They never saw him near the Cadillac. If they knew that there was a Cadillac on the property— You're saying there was a different car? Yes, Your Honor. There were two cars. There were two cars. I believe it's Plaintiff's Exhibit 20. The photographs that they produced— Do you know which one these drugs were supposed to be in? The drugs that were found were in the Cadillac. We don't—nothing was found. What was the arrest based on? The drugs found in the Cadillac, Your Honor, which is not where Jr. was. So you saw Jr. He's the only person you saw around any car? At that time, yes, that's correct, Your Honor. A tarped car, of course.  I'm sorry. No, go ahead. Did you ever see Sr. do anything? No, Your Honor. We never saw anybody—or the officers never saw anybody near the Cadillac. But did you—right. But your investigation was about Jr., wasn't it? Jr. was initially the main target of the investigation. You said initially. Well, later on, was Sr. ever a target? Sr. was never a target. He was identified as a person of interest when he made a hand-to-hand cash transaction outside of the DBC or Dope Boy Click house. There's something in the record here. When Sr. was arrested, he was told, we're really after your son. That was initially what was represented to him before he was arrested, Your Honor. Before he was arrested. This is while the search warrant was being executed. The search warrant? I thought you had an arrest warrant. No, it was a search warrant, and an arrest was made without a warrant, and then he was taken to the— What was the search warrant for what? For the plaintiff's house, Your Honor. Was there ever a search warrant for the Cadillac car? It was for the residence and all vehicles on the property. What's that? It was for the residence and all vehicles on the property. So it was a search warrant for the vehicle, the Cadillac? For all vehicles on plaintiff's property, Your Honor. Okay, so you're claiming that's a search warrant for the car. Correct. You're claiming that both the search warrant for the house and the search warrant for the car or two cars were issued by the magistrate. Your Honor, it was one search warrant for the entire property. One search warrant issued without an affidavit. There was an affidavit with the search warrant. There was no affidavit with the arrest warrant. No affidavit with the arrest warrant. That's correct, Your Honor. Okay, so they know how to write affidavits. I'm sorry? They do do affidavits for something. They do, yes, and usually with arrests there are affidavits. However, when there are a number of defendants and times of the essence, I suppose, the affidavits were not submitted. It was live testimony from Officer Lowry. And I think, Your Honor, one point that you were getting at earlier was your opinion in, I think it's Durham v. Horner. Which one? Durham v. Horner where you said if there's no evidence of what was said before the grand jury to secure the process of probable cause, then there's no malicious prosecution claim. There's what? No malicious prosecution claim. Mr. Harris, the plaintiff, was arrested based on a theory of constructive possession of the contraband in the Cadillac. But that constructive possession was solely because he lived in the home, correct? No, Your Honor. The indicia of dominion and control over the vehicle were his ownership, the keys were on his bedroom door, and he described them in his deposition as my rack of keys on his bedroom door where the keys to the Cadillac were hung. It's based on his ownership. Yes, ownership, presence, and then. No, presence, you mean not a presence. Sorry, presence on the property. He's at home. He lived there, right? He was the only occupant at the time, and there was nobody else taking responsibility for the drugs. Contraband found to be accused. This is not a case where, as counsel said, where they're in a car and you see it's on the floorboard, it's between two people, and that's when you say stuff like, well, nobody taking responsibility for the ownership, so it's constructive possession of both. That's not this case. That's turned logic on its head. He lives there. You knew that. That's correct, Your Honor. He would be there all the time. He couldn't control it. Unless he got another home, that's where he lived. And you're saying you found a three-year-old rusty car, inoperable car, and you found drugs there. But you had surveillance showing that someone else was in or about the curtilage of the property, seeming to be moving items out of an automobile, not that one but one, right? Correct. And then you have all this evidence that that other person may have been involved in drug trafficking. Correct. Junior, right? Correct, Your Honor. And then you never tell anybody about all of that. You just say, well, this man arrested for these drugs on that basis. Your Honor, the officers never observed either person, junior or senior, near the Cadillac. The officers talked about, conferred, and considered whether they were junior's drugs or some possibly senior's drugs. And they determined, based on their conversations and discussion of all of the facts, that it was less likely that junior would surreptitiously or independently put his parents' property at risk without their knowledge or participation. He had so many other places to store the drugs, including a storage locker in Aberdeen, eight minutes away, and the trap house that's been referenced, which was about five minutes away. He could store drugs at either one of those locations, but he allegedly, according to the plaintiffs, had drugs at his parents' property without their knowledge, and a small amount of drugs in comparison to what he was charged with. He was charged with, I think, possession between 100 and 500 kilos. Now, you're talking about he's junior or senior. Sorry. Yes, Your Honor. Junior was charged with... You're talking about junior. That's correct. And this was about three ounces. And this small suit was brought by senior. That's correct. By comparison to the charges against junior, it didn't make sense that he would independently and without his parents' participation at all put their property in question by storing drugs there. You knew that much about junior that you could read his mind like that? No, but that was the reasonable conclusion based on the facts known to the officers. That was the conclusion that they drew. That's speculation. That's called speculation. That's not probable cause. You're telling me, well, you know, I don't think he would have done this or his father put it there. It's unlikely that a nice son would do that. But, Your Honor... If that's the case, the Fourth Amendment would mean nothing. You're right. A police officer can just sit there and opine about someone's mind. That's your basis of probable cause? That's it? The key here is that they do not have to speculate into that. I'm adding it because they did consider whether they could pin whether the drugs were attributable to junior. Did they tell the magistrate that they had probable cause to believe that there were drugs in that Cadillac? Before the search was executed? Well, absolutely. Before the arrest was made. They found the drugs in the Cadillac before the arrest was made. No, but before they went in there, you said they... The search warrant was issued for the premises and all vehicles thereon. So, they went in the Cadillac and the Cadillac was unlocked. The driver door was unlocked.  The Cadillac was unlocked. So, anybody in the area could have gotten in the Cadillac. If they were trespassing or... And you charge senior without a record with trafficking in drugs. Correct? It wasn't possession. There was trafficking, possession with intent to distribute, possession... Trafficking. Yes, Your Honor. That means selling, right? Distributing. It was a trafficking... Trafficking is trafficking in the state code, in the federal code of distribution. Is that the same thing? Yes, Your Honor. And the officer's testimony with respect to trafficking was based on the volume of cocaine that was found in the vehicle. In North Carolina, State Supreme Court... The charge was trafficking. It was not possession. It was not simple possession. That's correct. And how much was the bond? I believe the initial bond set by the judge was $5 million. $5 million? That's correct, Your Honor. It was left... I'm sorry. No, go ahead. And it remained at $5 million for five months? No, Your Honor. It was reduced to $500,000 and then reduced to $25,000, secured with house arrest. Oh. How many months did he sit there with a $5 million bond? Your Honor, I'd have to check the joint appendix. It was months, wasn't it? Plural, months. I would be guessing, so I can't... I don't know if I can answer that question. Can you guess? I mean, you know the record. That's why you come to the Fourth Circuit. You come prepared. Correct. I believe... I would say about a month. About a month. But I don't know... Then you reduced it to a half a million dollars. The judge reduced it to a half a million dollars, Your Honor. Is that what your recommendation was? The police officer recommended that? No, Your Honor. That was the... The prosecution wanted to keep it at $5 million, and the officers had no input on that. That's the county prosecutor. Correct, Your Honor. Warren McSweeney. The district attorney, it's called, right? He's a judge now, but yes. Isn't something in the record about there was some complaints made about the police? Am I wrong about that? There were... There was citizen complaints. Is that what you're referring to, Judge Gregory? Yeah, citizen complaints, right? Yes, Your Honor. Mr. Harris was helpful in trying to help the community voice those complaints. Am I right about that? Mr. Harris assisted other citizens in meetings or discussions about either complaints or other matters with the police department. That's correct, Your Honor. Is that something that's consistent with somebody who wants to put drugs on their property, would be an advocate for those kind of things? Your Honor, I would be speculating to answer that. That's my point. You would be, just like you are saying that he's somebody that would be involved. You will be speculating on those other things. Your Honor, I think the speculation that I referred to about the mental state of Junior was weighing of probabilities, which gets back to the core issue of probable cause. Your colleague said that he was in custody for five months on his charge, and then was on bond for four months, right? You don't question that. It was a total of... Nine months. No, just under six months, Your Honor. Just under six months. Total. But you don't know how long he was in custody on this $5 million or $500,000, whatever it was. It was $5 million to begin with, and then it was reduced. I'm sure the records would show when. But a $5 million bond on an arrest without a record to support it. Because he was suspected to possibly be involved in this larger operation. Your Honor, that's a prosecutorial decision, not one made by my clients. Your clients are the officers. The officers, Your Honor. And you're a private practice lawyer. That's correct, Your Honor. The North Carolina Supreme Court in State v. Checkanow, which is 370 N.C. 488, 2018 case, quoting State v. Mattias, 354 N.C. 549, 2001 case, contraband found on the premises under control of the accused. This fact alone gives rise to a presumption of knowledge and possession sufficient to carry a case to a jury. Not probable cause, but to a jury. Knowledge of possession. Contraband found on the premises under the control of the accused in a contained area, whether it's a vehicle or inside of a residence. Contraband found in one of those areas gives rise to a presumption of knowledge and possession sufficient to take the case to a jury. That's the North Carolina Supreme Court, which is what the officers were bound by. Is that controlling fair? No, Your Honor, it's not. But in Taylor v. Waters, the court considered the state law of Virginia on constructive possession as informative as to whether or not there was, as a matter of law, constructive possession. In Virginia, that law is virtually the opposite. He wasn't charged with possession. He was charged with trafficking. Correct, Your Honor. The possession of the drugs that are being attributed to him. Possession in the federal system is misdemeanor. I believe that's correct, Your Honor. Generally. But the... Maybe they say there's a quantity or something. I'm speaking more... The quantity is what... But possession is a different charge than distribution in the federal system. That's what we're accustomed to. I'm not familiar with North Carolina law that much. Not at all. But I am... We have been... That's correct, Your Honor. When I refer to possession, I'm just referring to... 841 of Title 21 talks about possession. Part of it does. I'd have to take your word for that, Your Honor. I've never practiced criminal law. But when I refer to possession, what I mean is... I see that I'm over time. If I could just... Go right ahead. As long as you get questions. Sure. When I refer to possession, I'm not referring to the crime of possession. I'm referring to the fact. Some of this, to be quite frank with you, is interesting. To me. I agree, and that's why I'm in this practice. You're a good lawyer. We'll see about that, I suppose. Counsel, don't you have to look at... Texts without context is pretext. I mean, because you talk about ownership. He had the key. He had the key. I know a lot of people keep cars in their heads for a long time in their yard. This was clearly, it was inoperable, right? That's correct. And it was unlocked. The driver door was unlocked. So the possession of the key doesn't make any difference. Yeah. What difference does it make? He had the key. What's the key got to do with it when it's unlocked? It's an indicator of ownership, Your Honor, and presumably the owner's control over whether it's locked and who can access it. Did he display that he was well acquainted with the car's current condition? He did, Your Honor. He said which doors were locked and unlocked. He said the trunk won't open. He said the car won't turn on. It was his car. He was protecting it for a reason, and the plaintiff's representations... Well, nobody's disputing that he knew the car was there. I mean, he knew the car was there because it's his car. It's been there for three years sitting there. But he demonstrated an on-scene, acute familiarity with the inner workings of the car.  Well, he put a tarp over it, too. He put a tarp over it. That was maybe to protect the paint job or something. Correct. It meant something to him. That's not an acute awareness. He knew which doors were unlocked. He knew that the trunk wouldn't work. He knew that there was no battery. That's a chronic awareness. He's been there for three years. That's not acute. I mean, there's nothing about any recent... anything about the car other than it's this old and it's unlocked, and he has the key to it because it's his. It hasn't been registered in, what, three years. That's the evidence, right? And the drugs were found in his car, Your Honor. Yes, that's correct. And nobody saw Junior at that car. No one saw Junior at the car. At that car. That's correct. So if someone else had been sitting in the car, would Senior still have control? Your Honor... The car's inoperable now. Now, follow me. The car's inoperable. Would it change that he was still in control even if someone else was sitting there? That would change the totality of the circumstances, which is the entire test. So my answer is yes. That would change the circumstances because then the officers... Why? Why would that change it? Why would it change it? Because the officers would have to demonstrate some kind of connection of his knowledge other than his... You do. He has the key, and he knows it's sitting there, and he knows it's unlocked. The same thing used to use it now. Your Honor, in Westby, District of Columbia v. Westby, the court unequivocally said, the Supreme Court unequivocally said, it is the totality of the circumstances test. No single fact can be singled out and addressed as to whether or not it affects probable cause. So when you add a new fact... The totality doesn't help you at all in this case because that's what they're alleging you didn't do. You didn't give the totality. The son was the person who was the subject of the investigation. The drug thing, you know, traced him to a trap house, all these things. You're based solely on it was at his dad's house in an old car. Your Honor... And you never... I know you dispute it, but that's the allegation, that you knew that and didn't tell the whole story to the people and that caused him to sit in jail that long for, at some point, a $5 million bond. A person who had never been in trouble before, but somebody who did help citizens about complaints about the police department before that. Right? Respectfully, Your Honor, I disagree. What parts did I get wrong? The Rule 11 memorandum submitted by the assistant U.S. attorney in Harris Jr.'s case saying, Harris Jr. was seen at the Cadillac placing or taking items from it. That was, as plaintiff put it in the first page of their reply brief, a conclusion drawn by the U.S. attorney. But the fact that the U.S. attorney assumed that fact or believed that fact indicates that Jr. going over to the Cadillac, even if he did, which is, I guess, it's not reflected in the officer's notes and it's not something the officer saw, but the fact that the U.S. attorney continued to prosecute Sr. while believing that Jr. on two specific days, 20 days before the search warrant was executed, was at the Cadillac placing or taking narcotics from it, indicates that the prosecutor agreed with our decision, as did his two colleagues that also prosecuted this case in the U.S. attorney's office, the Moore County District Attorney and two grand juries. The prosecutor had to do it because you're the one who's feeding the information. Your Honor, the prosecutor stated that Harris Jr., our belief is that the prosecutor stated that Harris Jr. was placing or taking narcotics from the Cadillac as a conclusion, and the plaintiffs described it as the same. That was a conclusion drawn from the officer's observation. So a presentation of the case, if you will, more so than a verbatim recitation of the officer's observation of facts, historical facts of record, which is what the officers testified to to the grand juries. They did not draw conclusions for the grand juries. Which grand jury? Both. What? Federal and state, Your Honor. Federal and state. Did the state grand jury, they heard evidence? Yes, Your Honor. In return of the indictment? That's correct, Your Honor. Against Sr.? That's correct, Your Honor. And that was dismissed? It was dismissed when the federal indictment came down. So it was pending for how long, then? Until July 31st is when the federal indictment came down. There was a charge of trafficking? Essentially the same charges, Your Honor. And then there was a federal indictment? That's correct, on July 31st, 2018. And what was that for? The same charges. The federal government was adopting the state prosecution. In the middle district of North Carolina? That's correct, Your Honor. And it was dismissed? That was dismissed after the plea agreement. This is cited in our brief. The December 14th, 2018 memorandum of plea agreement submitted by Harris Jr., where he pled guilty to drug crimes. I can't recall exactly what. It's in our brief. I can't recall exactly what Harris Jr. pled guilty to. But at that point, that was when the officers could rule out Harris Sr. because somebody had taken responsibility for the drugs. Now the drugs weren't parceled out and said, you know, you took responsibility for the ones in your storage locker but not the ones at your father's house. Is that when Sr. successfully got out of jail? That was when the charges were dismissed, Your Honor. He got out of jail after the bond was reduced to $25,000 secured with house arrest. Two indictments were dismissed. Two indictments were brought in the state, county, circuit court or whatever it was, fair court, and then dismissed. An indictment brought in the federal court and it was dismissed. Correct, Your Honor. Did the federal prosecutor explain to the court why he was dismissing a drug indictment? There was a guilty plea by a co-defendant. Not the defendant. There was a guilty plea by Jr. Yes, there was a guilty plea by a co-defendant. I'm talking about the indictment of Sr. was dismissed. There was a guilty plea by a co-defendant to whom the drugs could be attributed. They were the same indictment. Were they indicted together? You say co-defendant? In a sense, yes. I mean, it was a drug ring investigation. It was a gang-affiliated drug ring investigation. So, in a sense, yes, they were listed as co-defendants. And I believe the case numbers, there's a dash two at the end of Jr.'s case number indicating that it's a companion case with a few others. Have you ever seen that indictment? The indictment of Jr., Your Honor? No, the indictment of this plaintiff. That is in the joint appendix, yes, Your Honor. Okay. It's available to us. That's correct. Okay. And the plea agreement pleading guilty to the crimes is when the officer is found as plaintiff referenced in the United States v. DeRay. When there was a single person that they could finally pin this on or attribute the drugs to, that is when the officer or the state or federal government dismissed the charges. Only at that point was probable cause negated. If there are no further questions, Your Honor. At that point, what happened for probable cause? Probable cause was negated because it negated, correct, the United States v. DeRay decision that plaintiff's counsel cited. Probable cause was negated when there was a guilty plea, a guilty party to whom the drugs could be attributed. At that point, presumably, there was no explanation of this by the U.S. attorney. But at that point, presumably, that is why the charges against Sr. were dismissed. If there are no further questions, Your Honor, defendants respectfully request that this court affirm the district court's grant of summary judgment in their favor. Thank you. Thank you. Counsel? As counsel for the defendants concedes, there's a clear issue of material fact here. Did Jr. go to the car and appear to place or take items from the Cadillac? They dispute that did not happen. There's clear evidence that we can present that that did happen. The U.S. attorney's memorandum, it's JA-222. In it, he says, on two separate surveillance occasions, Jr. arrives at the residence, goes over to a Cadillac with a gray cover for a few minutes, consistent with placing an item or retrieving an item from the vehicle. Powder cocaine and crack cocaine are later found. Officer Perry, one of the defendants, at his deposition, when I asked him, where would the U.S. attorney have gotten this information from, he said, only from us, either me or Lowry. So your argument is that if the magistrate or the ‑‑ I guess we don't know what was before the grand jury, but if folks had known that the son was near the car and seen putting something in or out of the car at least once, that no reasonable officer could believe that the father also knew about the drugs. They can't both have known. Sure. There are certainly joint possession cases. But that's what you have to argue, right, is that one excludes the other. You have to be arguing no reasonable officer would think he had probable cause to think that the father knew anything about these drugs. Exactly. A reasonable juror could find that no reasonable officer could come to that conclusion. Wait, a jury, a reasonable jury could find that no reasonable ‑‑ I thought you agreed with Judge King that's not a jury question. On probable cause, yes. Yes. I agree. And I do want to say, too, that there is testimony on the record from the officers that they testified in front of the grand juries and that they omitted this information from the grand jury. So we do actually know that that happened. Do we have the transcripts of any grand jury proceedings? We do not, Your Honor. We don't have any from state or federal. But we do have their testimony saying that they withheld it from the magistrate, they withheld it from the DA, they withheld it from the federal prosecutor. Now, eventually, these notes do come to the federal prosecutor. They do have a conversation with him. But that is after Senior is indicted. It's after he's detained. It's after all these things that we've talked about. But you acknowledge, you have to acknowledge that an indictment, assuming the state system, too, and the federal system, an indictment is probable cause. An indictment is a rebuttable presumption of probable cause. An indictment is probable cause. It is, but. It's probable cause. But there's cases in this circuit that say that it's a rebuttable presumption. And the way it's rebuttable is if you can prove that an officer either lied to a grand jury or omitted information, material information, from a grand jury. And that is exactly what we're alleging here. That is why there cannot be qualified evidence. I understand you're doing it. You've got it after the fact. You're, as I recall from your early argument, you're claiming that the biggest problem they have here is the arrest, the initial arrest, when they put him in jail and put him on a $5 million bond, which was well before the indictment in state and federal court. Exactly. Exactly. It's the start of legal processes, when he went before the magistrate. And the other cases that talk about this are United States v. Miller and United States v. Massey. And those are the cases that are on point and say that officers cannot omit material information from any of these decision makers from warrants when they're seeking a warrant, and that if they do, that violates the Fourth Amendment. And that is exactly what happened here. Did you all argue this case in the district court? We did not have opportunity to. Judge Osteen decided it on the paper. Decided it on the paper. Yes, Your Honor. If there are no further questions, we would ask that Your Honors reverse the decision of the district court and remand it to the district court for trial. Thank you. Madam Clerk, we'll adjourn court for the day. We'll come down and greet counsel and adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Roger L. Gregory, Allison J. Rushing